UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

 JONATHAN B.,

         Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:20-CV-01374-EAW

## **INTRODUCTION**

Represented by counsel, Plaintiff Jonathan B. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 11; Dkt. 12). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is denied and the Commissioner's motion (Dkt. 12) is granted.

**BACKGROUND**

Plaintiff received SSI benefits based on disability as a child. His eligibility for the benefits was redetermined once he attained the age of 18 when it was decided that he was no longer disabled as of March 21, 2017. (Dkt. at 98-109, 111-14).[1] Plaintiff requested reconsideration of the decision to cease his benefits on March 28, 2017, which was upheld on August 31, 2017. (*Id*. at 115-18, 133-36). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen Condovani on May 23, 2019. (*Id*. at 43-84). On June 5, 2019, the ALJ issued an unfavorable decision. (*Id*. at 20-36). Plaintiff then requested review by the Appeals Council, which the Council denied on August 3, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id*. at 6-8).

**LEGAL STANDARD**

**I.    District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**II.     Disability Determination**

Pursuant to the Act, individuals who are eligible for SSI benefits as children for the month preceding the month in which they attain the age of 18, must have their disability redetermined by the criteria used for determination of disability used for adults. *See* 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987. The regulations set forth a five-step sequential evaluation analysis that the ALJ must follow to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ typically determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). However, this step does not apply when redetermination of eligibility for disability for a child turning 18 takes place, and the ALJ starts his analysis at step two. *Id*. § 416.987(b).

At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

**DISCUSSION**

I.      **The ALJ's Decision**

The ALJ indicated that Plaintiff attained age 18 on November 16, 2016, and was eligible to receive disability benefits as a child for the month preceding the month in which he turned 18 years old. (Dkt. 10 at 22). Plaintiff was found no longer disabled as of March 31, 2017. (*Id*.).

Because step one does not apply for redetermination of disability at age 18, the ALJ proceeded to step two, where he found that Plaintiff suffered from several severe impairments: blindness in the right eye, bilateral nystagmus, bilateral hypoplastic optic nerves, panhypopituitarism, growth hormone deficiency, and bilateral flat feet status post-surgical correction. (*Id*.). The ALJ determined that Plaintiff's secondary hypopituitarism, diabetes insipidus, adrenal deficiency, attention deficit hyperactivity disorder (ADHD), and oppositional defiant disorder (ODD) were non-severe impairments. (*Id*.).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 24-25). Before proceeding to step four, the ALJ concluded that since March 31, 2017, Plaintiff retained the RFC to perform light work, except that he was unable to walk on uneven ground; perform work requiring near acuity, depth perception, field or vision work on the right, or far acuity work; perform balancing activities or work around hazards, such as unprotected heights, moving mechanical parts, or flammable liquids; climb ladders, ropes, or scaffolds; and drive or operate heavy equipment or machinery. (*Id*. at 25). The ALJ opined that even though Plaintiff was unable to read normal newspaper print, he could

read computer print at font size 18-20, and see normal work hazards, such as open doors, approaching people or vehicles, and boxes on the floor. (*Id.*).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 35). With the help of the VE, the ALJ determined that there were jobs that existed in significant numbers in the national economy since March 31, 2017 that Plaintiff could perform, such as the occupations of a housekeeping cleaner, laundry worker, and cleaner polisher. (*Id.* at 36). Accordingly, the ALJ concluded that Plaintiff's disability ended on March 31, 2017, and he had not become disabled since that date. (*Id.*).

## II.     The Commissioner's Determination is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to account for his non-severe ADHD and ODD impairments in the RFC assessment. (Dkt. 11-1 at 19-24). The Court disagrees.

As a general matter, "[a]n impairment or combination of impairments is found 'not severe' and a finding of 'not disabled is made at [step two] when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985). Such determination is made after the ALJ carefully evaluates the medical findings that describe the impairment and makes an informed judgment about its limiting effects on the individual's physical and mental ability to perform basic work activities. *Id*. at *4. Moreover, the ALJ is free to determine a claimant's RFC based on his review of the entire record and has to consider both severe and non-severe impairments when assessing the claimant's RFC. 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which

we are aware, including your medically determinable impairments that are not 'severe [ ]' . . . when we assess your [RFC] . . . ."); *see also Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (an RFC determination must account for limitations imposed by both severe and non-severe impairments).

Here, the ALJ determined that Plaintiff's ADHD and ODD were non-severe impairments because they did not cause more than minimal limitations in Plaintiff's ability to perform basis mental work activities. (Dkt. 10 at 22-24). Plaintiff does not argue that the ALJ erred in reaching this conclusion, and, instead, submits that the ALJ failed to meaningfully discuss these impairments in step four of his analysis and account for them in Plaintiff's RFC.[2] (Dkt. 11-1 at 22). The Court finds no error in the ALJ's reaching a conclusion that Plaintiff's mental limitations did not warrant any additional restrictions in Plaintiff's RFC.

Contrary to Plaintiff's assertions, the Court finds that the ALJ repeatedly addressed Plaintiff's mental functioning throughout his decision. Having found Plaintiff's ADHD and ODD non-severe in step two, the ALJ specifically acknowledged his obligation to consider Plaintiff's both severe and non-severe impairments when determining his RFC and attested that he had done so by conducting a more detailed assessment of Plaintiff's various mental functions of the "paragraph B" criteria of Listings 12.00. (*Id*. at 24).

---

[2] The Commissioner's argument includes a discussion related to the propriety of the ALJ's finding of Plaintiff's ADHD and ODD as non-severe impairments. (Dkt. 12-1 at 8-13). Because the Court does not read Plaintiff's argument in such a broad way, it will not address the ALJ's determination of the severity of Plaintiff's ADHD and ODD in its analysis.

To be sure, the ALJ found Plaintiff to be only mildly limited in all four areas of mental functioning. However, a finding of mild mental limitations does not necessarily imply the addition of mental limitations in the RFC. *See Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-cv-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021) ("[T]here are no regulations that mild limitations require mental limitations in the RFC."). Moreover, remand for failure to include mild non-severe limitations in mental functioning in the RFC is not warranted when the ALJ's determination of non-severe impairments is supported by the record. *See Katherine R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01055-MJR, 2021 WL 5596416, at *7 (W.D.N.Y. Nov. 30, 2021) ("Where, as here, an ALJ's findings of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC."); *but see Parker-Grose*, 462 F. App'x at 18 (the ALJ erred in concluding that plaintiff's depression was not severe and failed to consider functional limitations stemming from the impairment in the RFC).

Here, the ALJ's decision not to include any mental limitations in Plaintiff's RFC was supported by substantial evidence. It should be noted that the ALJ dedicated nearly two pages of his step four analysis to the evaluation of medical and other evidence related solely to Plaintiff's psychological functioning and discussed its consistency with Plaintiff's statements related to the limiting effects of his ADHD and ODD. (Dkt. 10 at 25, 33-35). *See Theodore C. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06482 EAW, 2022 WL 600840, at *6 (W.D.N.Y. Mar. 1, 2022) (no error in the ALJ's decision not to include additional restrictions stemming from plaintiff's non-severe impairments of anxiety and depression

when the ALJ discussed the evidence related to plaintiff's mental functioning and analyzed the consistency of plaintiff's statements with the medical evidence.).

The ALJ specifically acknowledged Plaintiff's testimony about being depressed and having panic attacks, and noted that Plaintiff did not attend any treatment but talked to his friends as a way of coping with his mental health symptoms. (Dkt. 10 at 26). The ALJ also discussed the reports of Plaintiff's mother, who indicated that her son "had attitude issues" with others at home, was unable to listen to adults, get along with his brother, accept criticism or correction from others, and needed reminders to do his chores. (*Id*. at 23, 26); Although the ALJ recognized that Plaintiff's ADHD and ODD could be expected to cause the alleged symptoms, their intensity and limiting effects were not consistent with the medical and other evidence record. *See Goettel v. Comm'r of Soc. Sec*., No. 1:18-CV-1285 (WBC), 2019 WL 6037169, at *6 (W.D.N.Y. Nov. 14, 2019) (the ALJ properly considered non-severe mental impairments in step four when he noted medical opinions contained in the record and analyzed plaintiff's allegations of limitations against medical findings and plaintiff's activities of daily living).

The record contains a variety of educational and medical records, as well as medical opinions of Plaintiff's treating physicians, consultative examiners, and state medical consultants, none of whom suggested that Plaintiff's mental limitations were of such severity that they would significantly impact Plaintiff's ability to function. On the contrary, the record demonstrates that most of Plaintiff's limitations stemmed from his visual, as opposed to mental, impairment. (Dkt. 10 at 436, 446, 493-95, 503, 507-09, 652-65). Indeed, Plaintiff's mental functioning was similar to children of his age, and his cognitive

and academic skills were within average when he only needed the modification of the content of the information presented to him to accommodate for his poor vision. (*Id*. at 425, 491). While Plaintiff had some problems in his ability to organize things, make and keep friends, work at a reasonable pace, and remember to take medications, his providers never reported him having any serious problems in these areas, nor in any other functional domains. (*Id*. at 425, 462, 529). Although sometimes Plaintiff had difficulty getting along with others, and exhibited argumentative and irrational behavior, he also was very mature, patient, polite, and easy to get along with. (*Id*. at 427, 429, 446, 496). His ability to get along with others had improved as he matured, and even though he struggled with social situations at times, he was a friendly student to staff and his peers, who listened and followed directions. (*Id*. at 446, 654). Plaintiff's cognitive abilities, including his verbal comprehension, perceptual reasoning, working memory, reading, mathematics, and written language, were all assessed to be average, while his processing speed was below average due to his visual impairment. (*Id*. at 437-39, 445-47, 652). Additionally, Plaintiff belonged to many school clubs—Skills USA, Archery and Adventure Club, Spanish Club, Act Club, Science Club, and Student Council—and liked reading, playing games, swimming, and biking. (*Id*. at 490, 563, 654). He was also involved in various summer work programs, took BOCES classes in high school, and attended Fredonia State College for several semesters. (*Id*. at 49-51, 491, 629). Even though he was unable to receive the required grades in college, it was due to his visual impairment and not his alleged disabling mental symptoms. (*Id*. at 49-51).

Although Plaintiff testified about having panic attacks at the hearing, he denied having any anger issues, depression, or anxiety to his treatment providers. (*Id*. at 59, 457, 462-63, 466, 670, 672). While reporting getting irritable when his family was insulted or when he was cut off in conversation to consultative examiner Dr. Susan Santarpia, Plaintiff also denied having any panic attacks, manic or cognitive deficits, or depression. (*Id*. at 462-63). During the examination, he appeared cooperative with fluent intelligent speech, coherent and goal-oriented thought process, intact attention, concentration, and memory, and fair insight and judgment. (*Id*. at 463-64). As a result of the examination, Dr. Santarpia opined that Plaintiff's verbal comprehension, perceptual reasoning, and working memory all fell within the average range of abilities, and his adaptive functioning was within normal limits for communication, self-care, social community, self-direction, health and safety, as well as academic, home living, and leisure. (*Id*. at 478-79). She also diagnosed Plaintiff with ADHD and opined that his psychiatric problems were not significant enough to interfere with his ability to function on a daily basis. (*Id*. at 465, 469). In addition to Dr. Santarpia, the record contains the opinions of State agency medical consultants Dr. G. Kleinerman and Dr. T. Bruni, who opined that Plaintiff's ADHD was non-severe and that he was only mildly limited in the four areas of mental functioning of the "paragraph B" criteria of Listings 12.00. (*Id*. at 102-03, 512-25).

Consequently, aside from making references to his subjective statements made to educational and medical providers, and noting some records in support of his argument, Plaintiff has failed to present any medical evidence that would warrant greater mental limitations than those identified by the ALJ. *See Lynette W. v. Comm'r of Soc. Sec*., No.

19-CV-1168-FPG, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) (plaintiff failed to articulate how her mild mental limitations caused her functional restrictions that the ALJ was required to include in the RFC). While Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (internal citations and quotations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). Because Plaintiff has failed to meet his burden to demonstrate that he had a more restrictive RFC than the one found by the ALJ, the Court finds that the RFC determination was supported by substantial evidence. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge, United States District Court

Dated: October 25, 2022
Rochester, New York